# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

CHRISTY MCKELVEY,

        Plaintiff,

v.                                  Case No. 5:22-cv-9-JRK

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

        Defendant.
_____/

## **OPINION AND ORDER**[1]

### I. Status

Christy McKelvey ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of "IBSC," "migraines," "hypothyroidism," "fibromyalgia," "ulcers," "[p]ain in left hand, wrist, and arm," "anxiety," "PTSD," "OCD," and "asthma." Transcript of Administrative Proceedings (Doc. No. 16; "Tr." or "administrative transcript"), filed February 25, 2022, at 62-63, 72-73, 97, 110, 284.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed February 25, 2022; Reference Order (Doc. No. 21), signed March 3, 2022 and entered March 4, 2022.

On February 6, 2020, Plaintiff protectively filed an application for DIB, and on March 20, 2020, she protectively filed an application for SSI. Tr. at 248-49 (DIB), 250-59 (SSI).[2] Plaintiff alleged a disability onset date of May 1, 2016 in the DIB application and May 15, 2016 in the SSI application. Tr. at 248 (DIB), 250 (SSI). The applications were denied initially, Tr. at 62-71, 88, 90, 92, 138-41, 142-44 (DIB); Tr. at 72-87, 89, 93, 95, 145-47, 149-51 (SSI), and upon reconsideration, Tr. at 96-108, 128, 133, 135, 168-73, 175-80 (DIB); Tr. at 109-27, 129, 130, 132, 155-60, 162-67 (SSI).[3]

On March 23, 2021, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE").[4] See Tr. at 33-61 (hearing transcript); Tr. at 239-41 (appointment of representative documents). On June 1, 2021, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 15-25.

Thereafter, Plaintiff requested review of the Decision by the Appeals

---

[2] The DIB and SSI applications were actually completed on February 7, 2020 and March 25, 2020, respectively. Tr. at 248 (DIB), 250 (SSI). The protective filing date for the DIB application is listed elsewhere in the administrative transcript as February 6, 2020, Tr. at 62, 96, and the protective filing date for the SSI application is listed as March 20, 2020, Tr. at 72, 109.

[3] Some of the cited documents are duplicates.

[4] The hearing was held via telephone with Plaintiff's consent because of extraordinary circumstances presented by the COVID-19 pandemic. Tr. at 35-36, 199-204, 230-32.

2

Council and submitted a brief in support of the request. Tr. at 4-5 (Appeals Council exhibit list and order), 243-44 (request for review), 386-89 (brief). On November 8, 2021, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On January 10, 2022, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ "failed to fully account for Plaintiff's migraine headaches" in making the finding regarding her residual functional capacity ("RFC"). Plaintiff's Memorandum – Social Security (Doc. No. 25; "Pl.'s Mem."), filed May 31, 2022, at 1 (emphasis omitted); see id. at 7-15. Within this general argument, Plaintiff contends the ALJ erred in evaluating her migraine headaches in two main respects: first, by failing to adequately analyze whether they meet or medically equal a Listing-level impairment at step three of the sequential evaluation process; and second, by failing to adequately account for the symptoms of the migraines at later steps. Id. at 7-9, 9-15. On August 26, 2022, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 28; "Def.'s Mem.") responding to Plaintiff's contentions.

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration of the step

three findings as they relate to Plaintiff's migraine headaches. On remand, reevaluating step three may impact the Administration's consideration of the other matter Plaintiff raises. For this reason, the Court need not address Plaintiff's argument in this regard. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.   The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021)

---

[5]   "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

(citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 18-25. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 1, 2016, the alleged onset date." Tr. at 18 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: left wrist arthralgia; diabetes mellitus type II; hypertension; hypothyroidism; headaches; vertigo; GERD; asthma; tobacco abuse; depressive disorder; anxiety; and PTSD." Tr. at 18 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1" (the "Listing(s)"). Tr. at 18 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except [Plaintiff] can lift, carry, push and/or pull twenty (20) pounds occasionally and ten (10) pounds frequently. She can stand and walk for approximately six (6) hours and can sit for approximately six (6) hours [i]n an 8-hour workday with normal breaks. She could occasionally climb stairs, balance, stoop, kneel, crouch and crawl, but should never climb ladders or scaffolds. She must avoid exposure to vibration, unprotected heights and hazardous machinery. During the eight-

5

> hour workday, she must avoid concentrated exposure to extreme heat, cold, wetness, humidity, and irritants such as fumes, odors, dust and gases. [Plaintiff] can handle exposure to a noise level intensity not above the "moderate" level as defined in the Selected Characteristics of Occupations (SCO). "Moderate" is defined in the SCO as the noise intensity level in a business office where typing is done, department store, grocery store, light traffic, and fast food restaurants at off-hours. She could perform tasks that are simple and that can be learned in 30 days or less. [Plaintiff] can occasionally interact with coworkers and the public. [Plaintiff] is limited to low stress work, defined as having only occasional decision-making and changes in the work setting.

Tr. at 20 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "is unable to perform any past relevant work" as a "rug cutter," a "machine packager," and a "carpet cutter II." Tr. at 24 (some emphasis and citation omitted). The ALJ then proceeded to the fifth and final step of the sequential inquiry. Tr. at 24-25. After considering Plaintiff's age ("38 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 24, such as "Shipping/receiving weigher," "Checker I," and "Cafeteria attendant," Tr. at 25 (some emphasis omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from May 1, 2016, through the date of th[e D]ecision." Tr. at 25 (emphasis and citation omitted).

6

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff argues the ALJ erred at step three by incorrectly finding that a medical source has not opined Plaintiff medically equals a Listing with respect to her migraine headaches, and by finding that the evidence does not support Plaintiff medically equaling a Listing. Pl.'s Mem. at 7-9. Responding, Defendant argues there are no objective findings that support Listing-level severity, and that the ALJ was right to find—even in light of a treating source's opinion that was not addressed by the ALJ at this step—that Plaintiff's symptoms do not medically equal a Listing. Def.'s Mem. at 3-6.

At step three, the burden rests on the claimant to prove the existence of a Listing-level impairment. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. See, e.g., id.; see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson, 284 F.3d at 1224 (internal quotations and citations omitted). "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." Id. (internal quotations and citations omitted).

There is no Listing that applies directly to migraine headaches, but the Administration "may find that a primary headache disorder, alone or in

combination with another impairment(s), medically equals a listing." Social Security Ruling (SSR) 19-4p, 2019 WL 4169635, *7. Listing 11.02 (epilepsy) is the most analogous listed impairment. See id. SSR 19-4p explains, "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures) . . . ." Id. Paragraph B of Listing 11.02, which Plaintiff contends her impairment medically equals, see Pl.'s Mem. at 9, requires "dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. SSR 19-4p, at *7; 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02. Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control, and blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00H1b. "To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, [the Administration] consider[s]: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can

9

produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations)." SSR 19-4P, at *7.

Here, the ALJ considered at step three whether Plaintiff meets or equals a Listing and found she did not. Tr. at 18. The ALJ gave "particular consideration" to a number of Listings, including those set forth in "11.00, et seq., Neurological Disorders" and found that "despite [Plaintiff's] combined impairments, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." Tr. at 18.

The ALJ at step three did not identify or discuss opinions rendered by treating neurologist Lance Kim, D.O. that apply directly to the consideration of whether Plaintiff medically equals Listing 11.02. See Tr. at 18; see also Tr. at 937-51 (Dr. Kim's opinions). Importantly, Dr. Kim explicitly opined on many of the relevant considerations set forth in SSR 19-4P. See Tr. at 937-51. Dr. Kim opined, among other things, regarding the symptoms of Plaintiff's migraines (vertigo, malaise, photosensitivity, visual disturbances, mood changes/mental confusion, inability to concentrate), the frequency (about fifteen days per

10

month), the duration ("[unidentifiable] hours"), the triggers, the things that make the headaches worse and better, the objective signs, the treatment and response ("suboptimal"), the prognosis ("poor"), the need for unscheduled breaks, and Plaintiff's incapability of performing "even 'low stress' jobs." Tr. at 944-48.

The ALJ's lack of discussion of Dr. Kim's opinions calls into question whether the ALJ considered them in finding that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." Tr. at 18. Nor is the undersigned satisfied that, in light of Dr. Kim's opinions, this finding is supported by substantial evidence.

Defendant, in addressing the step three findings, states that "the ALJ reasonably concluded that none of the symptoms Dr. Kim identified were of a severity and intensity supporting an 'uncommon' finding of equivalency to dyscognitive seizures." Def.'s Mem. at 6 (citations omitted). That sort of conclusion would be for the ALJ to make in the first instance, while providing enough analysis so that the Court can be satisfied that Listing 11.02 was

adequately considered in accordance with SSR 19-4P.[6] The matter must be remanded for the ALJ to reconsider the findings at step three.

## V.    Conclusion

In light of the foregoing, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)    Reconsider whether Plaintiff meets or medically equals a Listing at step three, ensuring explicit consideration of Dr. Kim's opinions and the matters set forth in SSR 19-4P;

(B)    If appropriate, address the other issues raised by Plaintiff in this appeal; and

---

[6] Later in the Decision, the ALJ did eventually address Dr. Kim's opinions in conjunction with the RFC finding. See Tr. at 23. The ALJ found the opinions to be "not persuasive" because of inconsistency with progress notes and "largely unremarkable" examination findings. Tr. at 23. However, the ALJ did not discuss any aspects of the opinions that are relevant to the Listing considerations set forth in SSR 19-4P, focusing only on ultimate conclusions that Plaintiff "was not capable of even low stress work, would miss 3 or more days per month from work, and would require unscheduled breaks during the workday" (even though the ALJ did cite the entirety of the opinions). Tr. at 23 (citing Exs. 23F, 24F, 25F, located at Tr. at 937-51). As stated above, Dr. Kim opined on the frequency of the headaches and many other matters, as well as the "suboptimal" response to treatment, well after the last-dated treatment note. Compare Tr. at 944-49 (March 26, 2021 opinion), with Tr. at 446-74, 812-34 (progress notes, the last of which being dated November 3, 2020). Ultimately, the ALJ's Decision does not make clear whether the ALJ considered these important matters either at step three or at later steps.

(C)   Take such other action as may be necessary to resolve this claim properly.

2.   The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on January 30, 2023.

                                                JAMES R. KLINDT
                                            United States Magistrate Judge

kaw
Copies:
Counsel of Record